No. 24-1488

# United States Court of Appeals
# For the First Circuit

ARLETA MONGUE, individually and on behalf of all
other persons similarly situated,

*Plaintiff-Appellee,*

v.

THE WHEATLEIGH CORPORATION; L. LINFIELD SIMON;
SUSAN SIMON; MARC WILHELM

*Defendants-Appellants.*

On Appeal from the United States District Court
for the District of Massachusetts

**REPLY BRIEF FOR DEFENDANTS-APPELLANTS**

Matthew P. Horvitz
GOULSTON & STORRS PC
One Post Office Square
Boston, MA 02109
(617) 483-1776
mhorvitz@goulstonstorrs.com
*Attorney for the Appellants*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT .......................................................... 1

REPLY ARGUMENT ...................................................................... 3

I.   The classwide harm identified by the district court was insufficient to establish Article III standing. .......................... 3

    A.   The Notice Claim constitutes an informational injury with no adverse downstream consequences. ........ 3

    B.   The only classwide harm identified by the district court arose from the Notice Claim. ................................. 8

II.   Wheatleigh could not consent to a conflict affecting unnamed class members. ................................................................... 10

III.  An agreement to settle does not waive appellate rights or matters within the court's purview. .................................... 13

CONCLUSION ............................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                              **Page(s)**

*Acheson Hotels, LLC v. Laufer*,
  601 U.S. 1 (2023) ................................................................... 7, 11

*Amrhein v. eClinical Works, LLC*,
  954 F.3d 328 (1st Cir. 2020) ......................................................... 5

*Anderson v. Hannaford Bros. Co.*,
  659 F.3d 151 (1st Cir. 2011) ....................................................... 15

*Gary v. Dynatrace, Inc.*,
  2024 WL 4002766 (D. Mass. Aug. 22, 2024) ................................. 5

*Gonzalez v. Water Dragon, LLC*,
  2019 WL 10189604 (Mass. Super. Ct. Aug. 30, 2019) ................. 5

*Gonzalez v. XPO Last Mile, Inc.*,
  579 F.Supp.3d 252 (D. Mass. 2022) ........................................... 10

*Guthrie v. Rainbow Fencing Inc.*,
  113 F.4th 300 (2nd Cir. 2024) ...................................................... 8

*Haven's Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ................................................................. 7, 8

*Kevlik v. Goldstein*,
  724 F.2d 844, (1st Cir. 1984) .................................................... 11

*Laufer v. Acheson Hotel, LLC*,
  50 F.4th 259 (1st Cir. 2022) ..................................................... 6, 8

*McCoy v. Massachusetts Inst. Of Tech.*,
  950 F.2d 13 (1st Cir. 1991) ....................................................... 15

*Pinto v. Aberthaw Const. Co.*,
  418 Mass, 494 (1994) ................................................................ 14

ii

*Putnam Resources, Ltd. Partnership v. Sammartino, Inc.*,
   124 F.R.D. 530 (D.R.I. 1988) ........................................................ 11

*Robinson v. National Student Clearinghouse*,
   14 F.4th 56 (1st Cir. 2021) ......................................................... 14

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ......................................................... 4, 5, 7, 8

*U.S. v. Charter Intern. Oil. Co.*,
   83 F.3d 510 (1st Cir. 1996) ......................................................... 14

*Velazquez-Velez v. Molina-Rodriguez*,
   235 F.Supp.3d 358 (D.P.R. 2017) ............................................... 11

*Webb v. Injured Workers Pharmacy, LLC*,
   72 F.4th 365 (1st Cir. 2023) .......................................................... 4

**Statutes**

Mass. Gen. Laws. c. 149, § 152A .................................................... 5

**Rules**

Fed. Civ. Proc. R. 23(a) .............................................................. 10

Federal Rule of Appellate Procedure 32(a)(5) ................................ 17

Federal Rule of Appellate Procedure 32(a)(6) ................................ 17

Federal Rule of Appellate Procedure 32(a)(7) ................................ 17

Federal Rule of Appellate Procedure 32(f) ..................................... 17

Federal Rule of Civil Procedure 23 ...................................... 1, 2, 11

**Regulations**

29 C.F.R. 531.56(e) .......................................................... 9

Other Authorities

*Robbing Peter to Pay Paul: The Conflict of Interest Problem in Sibling Class Actions,*
   21 GEO. J. LEGAL ETHICS 1195 (2008) .................................... 13

## PRELIMINARY STATEMENT[1]

This appeal involves novels issues affecting class action settlements and the district court's gatekeeping function under Federal Rules of Civil Procedure 23. Lacking any citations to the record below, the Appellee's brief is replete with *ad hominem* attacks against Mr. Simon and mistaken speculation about the impetus for this appeal. Wheatleigh declines to engage on those issues.[2]

Rather Wheatleigh addresses specific points in response to the Appellee's brief about Mongue's lack of standing under Article III, the inherent and unwaivable conflicts arising from Class Counsel's concurrent representation of the plaintiffs in the Class Action and Individual Cases, and whether the December Emails waived Wheatleigh's appellate arguments concerning the district court's obligations under Federal Rule of Civil Procedure 23.

---

[1] Unless specifically defined in this Reply Brief, all capitalized terms are used consistently with the meanings ascribed to them in the Brief for Defendants-Appellants, *Mongue v. The Wheatleigh Corp et al.*, No. 24-1488 (1st Cir. *filed* Oct. 17, 2024).

[2] One misstatement of the record in the Appellee's Brief deserves mention. The Final Approval Order only concerned the settlement of the Class Action; the Individual Cases were previously dismissed with prejudice.

First, Wheatleigh appealed the district court's approval of a class action settlement because Mongue's Notice Claim constitutes an "informational injury" lacking the adverse downstream consequences necessary for Article III standing. Although Mongue pled, and the district court referenced, two other claims concerning tips practices with waitstaff employees at the Hotel, the class definition and time period in the Final Approval Order were premised on the Notice Claim.

Second, Wheatleigh did not, and could not, implicitly consent to the conflict raised by Class Counsel's concurrent representation of Mongue and unnamed class members in the Class Action and the plaintiffs in the Brown, Harris, and Hamel Litigations in connection with a global settlement. While it is unique for a defendant to raise these types of concerns, those matters remained within the scope of the district court's analysis under Rule 23.

Third, neither the December Emails nor any other actions by Wheatleigh waived its appellate rights concerning the district court's rulings on class certification, damages, or conflicts.

## REPLY ARGUMENT

### I.    The classwide harm identified by the district court was insufficient to establish Article III standing.

The district court erred when it allowed Mongue to pursue the Notice Claim, despite her failure to demonstrate the concrete harm required for standing under Article III. In the Final Approval Order, the district court did not identify which "claims" were subject to the settlement. Instead, the district court relied on a damage calculation by Class Counsel that focused on the Notice Claim. Thus, as detailed below, the Notice Claim was the basis of the Final Order.

#### A.    The Notice Claim constitutes an informational injury with no adverse downstream consequences.

Mongue attempts to establish concrete harm by arguing that the Notice Claim precluded her from filing a lawsuit earlier. *See* Brief for Plaintiffs-Appellees at 5, Mongue v. The Wheatleigh Corp et al., No. 24-1488 (1st Cir. *filed* Oct. 17, 2024). There is no record evidence to support this theory.

This attenuated and speculative theory of harm cannot transform the informational injury of the Notice Claim into an

injury in fact.[3] *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) ("Article III requires that, to have standing, the plaintiff's injury in fact must be concrete, that is, real, and not abstract"). There is no record evidence substantiating that Mongue was unaware of her compensation at Wheatleigh or that Mongue was unaware that Wheatleigh was taking a tip credit for its waitstaff. *See* RA 71.

As the Supreme Court explained in *TransUnion*, concrete harm for the purposes of standing can be established by a traditional tangible harm or an intangible harm. *See* 594 U.S. at 425. A tangible harm occurs when "a defendant has caused physical or monetary injury to the plaintiff." *Id.* An intangible harm is the existence of "injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," such as "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.; see Webb v. Injured Workers Pharmacy, LLC,* 72 F.4th 365, 376 (1st Cir. 2023) (plaintiff

---

[3] It is just as plausible that Mongue failed to sue earlier because she was receiving the exact amount of compensation from her job that she expected, which was always at least minimum wage.

did not experience a traditional tangible harm, but instead established intangible harms from the use and exposure of their personally identifiable information after a data security breach).

Mongue's alleged informational injury is not related to any tangible or intangible harm for her pleaded claims. Instead, the harm Mongue alleged under the Notice Claim amounts to a "bare procedural violation," insufficient for standing. *See TransUnion*, 594 U.S. at 424; *Amrhein v. eClinical Works, LLC*, 954 F.3d 328, 331 (1st Cir. 2020) (bare procedural violation insufficient for standing); *Gary v. Dynatrace, Inc.*, No. 23-11673-MGM, 2024 WL 4002766, at *2-3 (D. Mass. Aug. 22, 2024) (bare procedural violation insufficient for standing).

The record evidence indicates that Wheatleigh provided employees with the "Wage and Hours Laws" poster from the Massachusetts Attorney General's Office, RA 584, which at least one court has found sufficient to satisfy the tips-credit notice requirement under Mass. Gen. Laws. c. 149, § 152A. *Gonzalez v. Water Dragon, LLC*, No. 17-01425-F, 2019 WL 10189604, at *4-5 (Mass. Super. Ct. Aug. 30, 2019). Thus, the Notice Claim amounts

to an argument that Mongue received the tips-credit information in merely the wrong format.

This type of informational harm lacks identifiable "downstream consequences" necessary to establish concrete harm under Article III.[4] Mongue's reliance on *Laufer v. Acheson Hotel, LLC* is misplaced. 50 F.4th 259, 263 (1st Cir. 2022), vacated and remanded, 601 U.S. 1 (2023); *see* Brief for Plaintiffs-Appellees at 3, 5, *Mongue*, No. 24-1488. In *Laufer*, a plaintiff with physical disabilities sued a hotel for failing to include on its website booking information for accessible rooms. 50 F.4th at 263. On an appeal from the district court's order dismissing the plaintiff's claims for lack of standing, this Court discussed the contours of "informational harm" for standing. *Id.* at 270. Relying on similar informational requirements under the Fair Housing Act and Americans against Disability Act, this Court explained that the denial of information about accessible hotel rooms to a "tester" plaintiff, who had no intent to stay at the hotel, constituted a sufficient injury. *Id.* at 265, 268-275. In particular,

---

[4] This is underscored by the fact that Mongue and the class received compensation exceeding the applicable minimum wage. RA 641.

6

this Court emphasized that "… the denial of information to a member of a protected class alone can suffice to make an injury in fact[,]" regardless of the intended use of that information." *Id.* at 270 (citing *Haven's Realty Corp. v. Coleman*, 455 U.S. 363 (1982) (citation omitted)).

This Court distinguished *Laufer* from *TransUnion*, in part because the plaintiff in *TransUnion* was not denied information, but instead that he received it in the wrong format and he "identified no 'downstream consequences' from failing to receive the required information." *Id.* (citing *TransUnion*, 594 U.S. at 442 (citation omitted)) (cleaned up).[5] Here, there were no downstream consequences from Mongue and other class members failing to receive a specific format of the tip credit notice. This precludes a finding that Mongue and the class suffered concrete harm. Mongue not only received information about the tips credit from the poster, *supra*, but she also was aware that Wheatleigh was taking a tips credit. RA 71.

_____

[5] While the Supreme Court later vacated *Laufer* based on mootness grounds, *Acheson Hotels, LLC v. Laufer*, 601 U.S. 1 (2023), this Court's analysis in *Laufer* is instructive.

This situation is unlike *Laufer* and *Havens Realty*, where tester plaintiffs, based on their protected statuses, did not receive any information about accessible hotel rooms or the availability of rental apartments. *Laufer*, 50 F.4th at 263; *Haven's Realty Corp.*, 455 U.S. at 369. As this Court explained in *Laufer*, "*TransUnion* says that informational injuries need to 'cause[] … adverse effects' to satisfy Article III[]," including dignitary harm or stigmatic injuries caused by discrimination. *Laufer*, 50 F.4th at 274 (*citing TransUnion*, 594 U.S. at 442 (citation omitted)). The Notice Claim does not include a similar lack of information, protected statuses, or injuries analogous to the harm caused by discrimination. It is only an argument that Wheatleigh should have provided another form of notice in addition to the "Wage and Hours Laws" poster.

## B. The only classwide harm identified by the district court arose from the Notice Claim.

Separate from the question of whether the Notice Claim was an informational injury sufficient to provide Article III standing, Mongue argues that the other claims in her complaint satisfy the "concrete harm" requirement. *See* Brief for Plaintiffs-Appellees at 6-7, *Mongue*, No. 24-1488. Mongue, however, cannot satisfy her

burden of demonstrating standing without establishing specific harm in the factual record.[6]

Mongue must "demonstrate standing for each claim that [she] press[es] and for each form of relief that [she] seek[s]." *TransUnion*, 594 U.S. at 431; *see also Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 305 (2nd Cir. 2024) (emphasizing that a plaintiff cannot rely on "technical violations," but must show "actual injuries suffered as a result of the alleged . . . wage notice and wage statement violations"). The district court's standing analysis failed to distinguish the Notice Claim from Mongue's other claims. *See* RA 222-236, 574-591. Those other claims are that Mongue performed "untipped" work and that non-tipped employees participated in the tip pool. *See* Brief for Plaintiffs-Appellees at 1, *Mongue,* No. 24-1488.

The undisputed record evidence also demonstrates that only class members participated in Wheatleigh's tip pool from approximately January 2018 until end of the class time period in

_____

[6] The factual record demonstrates that Wheatleigh compensated Mongue and other waitstaff with at least minimum wage for all hours worked.

2020. *See* Supplemental Affidavit of L. Linfield Simon at ¶ 19, *Mongue v. The Wheatleigh Corp et al.*, No. 3:18-cv-30095 (D. Mass. *filed* February 23, 2021), ECF No. 106-1. Why does this matter? The class period in the Final Approval Order runs from May 7, 2017 through March 1, 2020. This time period indicates that the Final Approval Order was predicated on the Notice Claim, which spans the entire duration of the class period.

## II.    Wheatleigh could not consent to a conflict affecting unnamed class members.

Mongue argues that Wheatleigh consented to Class Counsel's conflict by continuing to litigate. *See* Brief for Plaintiffs-Appellees at 8-9, Mongue, No. 24-1488. However, this was not a conflict that Wheatleigh could consent to or waive.

When a conflict of interest arises in a class action, it is the court's role to determine whether the "representative parties fairly and adequately protect the interests of the class." Fed. Civ. Proc. R. 23(a); *Gonzalez v. XPO Last Mile, Inc.*, 579 F.Supp.3d 252, 262 (D. Mass. 2022) (the Court raised *sua sponte* concerns over a potential conflict). In circumstances where parties file disqualification motions after significant delays, courts have held that the parties

did not implicitly consent to the conflicts. *See, e.g.*, *Kevlik v. Goldstein*, 724 F.2d 844, (1st Cir. 1984)*; Velazquez-Velez v. Molina-Rodriguez*, 235 F.Supp.3d 358, 360-61 (D.P.R. 2017); *Putnam Resources, Ltd. Partnership v. Sammartino, Inc.*, 124 F.R.D. 530 (D.R.I. 1988).

Wheatleigh was unaware of the implications with Class Counsel representing Mongue and the putative class members in the Class Action as well as the plaintiffs in the Individual Cases until after the parties exchanged the December Emails and began working on various structures for a settlement agreement. *See* Brief for Defendants-Appellants at 10-14, *Mongue*, No. 24-1488. It was only then that Wheatleigh understood a limited settlement fund would be allocated by Class Counsel among the Class Action and the Individual Cases, and that the attorneys' fees would be allocated from that limited settlement fund among the four lawsuits. *See id.* at 12-13.

This development caused Wheatleigh to question the viability of the December Emails and, ultimately, to oppose Mongue's motion for enforcement of the settlement and her motions for preliminary and final approval under Rule 23. *See id.* at 13-14. In each of those

11

oppositions, Wheatleigh raised its concerns with the conflict and that such concerns precluded enforcement of the parties' settlement. *See* RA 222-236, 494-506, 574-591. Similarly, until Class Counsel submitted an application for attorneys' fees, Wheatleigh was unaware that Class Counsel had a co-counsel from another firm throughout the Class Action and Individual Cases, and that a significant proportion of the attorneys' fees would be allocated to the Individual Case. *See* Defendants' Memorandum in Opposition to Plaintiff's Motion for Attorney's Fees and Expenses at 1, 6, *Mongue v. The Wheatleigh Corp et al.*, No. 3:18-cv-30095 (D. Mass. *filed* February 23, 2021), ECF No. 176.

Moreover, the district court made no finding of fact or legal ruling that Wheatleigh raised the conflict for an improper reason, despite Mongue's arguments to the contrary. *See* Brief for Plaintiffs-Appellees at 8-10, *Mongue*, No. 24-1488. In fact, the district court's order for enforcement of the settlement specifically found that the plaintiffs had not offered any evidence of an improper motive. *See* RA 536-563. Wheatleigh addressed this issue at the outset of briefing on Mongue's motion to enforce a settlement agreement:

12

> Discussing analogous circumstances with so-called 'sibling class actions,' two commenters accepted '...the court's natural disinclination to trust a defense lawyer when she claims that she is looking out for the best interests of the class; it seems like the fox guarding the henhouse.'

RA 581 (quoting Richard G. Stuhan and Sean P. Costello, *Robbing Peter to Pay Paul: The Conflict of Interest Problem in Sibling Class Actions*, 21 GEO. J. LEGAL ETHICS 1195, 1199 (2008)).

"However, as recognized by these same commentators, 'the fact of the matter is that the integrity of any class action judgment—whether by settlement, dispositive motion, or trial and regardless of who wins—depends on the absence of conflicts.'" *Id.*

These types of concerns about conflicts and the settlement structure motivated Wheatleigh's actions after the December Emails. *See* Brief for Defendants-Appellants at 13-14, *Mongue*, No. 24-1488. As evidenced by its consistent positions on the viability of the settlement, Wheatleigh did not waive any of the issues raised in this appeal.

## III.  An agreement to settle does not waive appellate rights or matters within the court's purview.

Mongue argues that Wheatleigh's arguments concerning class certification, damages, and conflicts are improper because the

13

parties entered into a settlement agreement through the December

Emails. *See* Brief for Plaintiffs-Appellees at 7, *Mongue*, No. 24-1488.

Parties have the right to appeal a judgment issued by the

court. *See U.S. v. Charter Intern. Oil. Co.*, 83 F.3d 510, 516 (1st Cir.

1996) ("It is possible for a party to consent to a judgment and still

preserve his right to appeal, so long as he reserve[s] that right

unequivocally."). The approval of a class action settlement is a

judgment on behalf of the court that may be appealed by an

opposing party. *See Robinson v. National Student Clearinghouse*, 14

F.4th 56, 60 (1st Cir. 2021) (despite the presence of a class-action

settlement agreement, the First Circuit heard all arguments before

the district court).

The act of entering into a settlement agreement does not

automatically waive defenses or arguments. Parties may expressly

agree to waive the right to appeal within the contents of the

settlement agreement. *See Pinto v. Aberthaw Const. Co.*, 418 Mass.,

494, 498 (1994) ("The parties to the settlement agreed to waive all

rights of appeal," and therefore could not appeal the judge's

allocation of the fee). But no such waiver was included in the

December Emails, which form the basis of the parties' settlement

14

agreement. *See* Motion for Settlement to Enforce Settlement
Agreement, *Mongue v. The Wheatleigh Corp et al.*, No. 3:18-cv-30095
(D. Mass. *filed* February 23, 2021), ECF Nos. 138, 139-1. The
December Emails lack any clause waiving the right to appeal, ECF
No. 139-1, and Wheatleigh preserved its objections each time the
district court was presented with the class settlement. *See* RA 474-
91.

Thus, because Wheatleigh raised these arguments with the
district court, they were not waived. *C.f. Anderson v. Hannaford
Bros. Co.*, 659 F.3d 151, 158 n.5 (1st Cir. 2011) (court holding that
an argument not made first to the district court is waived); *McCoy v.
Massachusetts Inst. of Tech.*, 950 F.2d 13 (1st Cir. 1991) (holding
that theories not provided to the district court are waived).

## **CONCLUSION**

By reason of the above and Wheatleigh's opening brief, this
Court should reverse the district court's final judgment and dismiss
the Class Action. In the alternative, this Court should vacate the
final judgment and remand this action for further proceedings.

Respectfully submitted,

/s/ *Matthew P. Horvitz*
Matthew P. Horvitz
Goulston & Storrs PC
One Post Office Square
Boston, Massachusetts 02109
(617) 483-1776
mhorivtz@goulstonstorrs.com
*Attorney for the Appellants*

February 6, 2025

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7) because this brief contains 2,783 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in 14-point Bookman Old Style font, a proportionally spaced typeface, using Microsoft® Word for Microsoft 365 MSO (Version 2402).

Dated:  February 6, 2025     /s/ *Matthew P. Horvitz*
                             Matthew P. Horvitz
                             *Attorneys for the Appellants*

17

UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

**CERTIFICATE OF SERVICE**

No. 24-1499


     I, Matthew P. Horvitz, hereby certify that on February 6, 2025, I electronically filed this Appellants' Brief with the Court using the CM/ECF system. I certify that the following parties or counsel are registered CM/ECF users and will receive service through the CM/ECF system:

> Jeffrey Morneau, Esq.
> Connor & Morneau, LLP
> 273 State Street, 2nd Floor
> Springfield, MA 01103


Dated:  February 6, 2025        */s/ Matthew P. Horvitz*
                                   Matthew P. Horvitz